**Donald JENNINGS, Plaintiff,**

v.

**Ahmad S. AL–DABAGH, Defendant.**

**No. 01–10176–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

July 30, 2003.

Donald Jennings, Kincheloe, MI, for plaintiff.

Ronald W. Chapman, Kimberley A. Koester, Chapman Assoc., Bloomfield Hills, MI, for defendant.

## OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION, GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE WITH PREJUDICE

LAWSON, District Judge.

The plaintiff is a state prisoner who has filed a complaint against a prison doctor alleging a violation of the Eighth Amendment, via 42 U.S.C. § 1983, on the basis that the defendant was deliberately indifferent to the plaintiff's serious medical needs. Now before the Court is the report of Magistrate Judge Charles E. Binder, operating under an order of reference to conduct all pretrial proceedings, recommending that the defendant's motion for summary judgment be granted and that this case be dismissed with prejudice. The plaintiff objected to the recommendation, and the defendant replied to the objections. The defendant argues in his motion for summary judgment that, after he furnished the Court with a complete set of the plaintiff's medical records and a renewed affidavit, the plaintiff has failed to come forward with trial-worthy evidence that creates a fact issue on the key elements of his claim. After conducting a *de novo* review of the motion papers, the Report and Recommendation, and the parties' responses thereto, the Court finds that the plaintiff has failed to demonstrate a material fact dispute that requires a resolution by trial on the question of whether the defendant inflicted cruel and unusual punishment upon the plaintiff. The Court will therefore grant the defendant's motion for summary judgment and dismiss the case.

## I.

The plaintiff, who is presently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, filed this *pro se* prisoner civil rights suit against Doctor Ahmad S. Al–Dabagh, who is employed by Correctional Medical Services, Incorporated (CMS), claiming that his constitutional rights were violated by the defendant. The incidents giving rise to this suit took place while the plaintiff was incarcerated at the Saginaw Correctional Facility in Freeland, Michigan. The plaintiff asserts in his verified complaint that on or about November 24, 2000, he sent a request to "Medical" for treatment of a toenail fungus, alleging that his "foot has burning, intching [sic], and cracks that bleed every now and then." Compl. at 4. The plaintiff met with Dr. Al–Dabagh on December 7, 2000 and again on January 2, 2001. At both appointments, the plaintiff alleges that Dr. Al–Dabagh refused to prescribe any medication or ointment for the plaintiff to treat his condition. *See id.*

In response to the complaint, the defendant filed a motion to dismiss arguing that the plaintiff failed to state a cause of action under 42 U.S.C. § 1983 because the defendant's actions did not violate any of the plaintiff's constitutionally protected rights. The defendant submitted an affidavit along with his motion to dismiss in which he claims that he refused to provide certain medication to the plaintiff because, in his medical judgment, "the requested medication was inappropriate" and because "the medication requested by [the plaintiff] included side effects to the liver[,] which [the defendant] deemed to be medically inappropriate in [the plaintiff's] case due to elevated liver indicators in [the plaintiff's] blood work." Al–Dabagh Aff. at ¶¶ 3–4.

The plaintiff contended in his response to the defendant's motion to dismiss that he was denied medical treatment because

the defendant works for CMS and CMS "orders their doctors to keep the costs down, and when possible, not to treat people regardless even [sic] if it is necessary." Pl.'s Resp. Br. to M. to Dismiss at 2.

The Magistrate Judge filed a Report and Recommendation on October 16, 2001 recommending that the defendant's motion to dismiss, which the Magistrate Judge construed as a motion for summary judgment because of the affidavit filed by the defendant, be granted and the case dismissed. The Court, however, rejected this recommendation, concluding that the defendant's affidavit did not negate the existence of genuinely disputed material facts where the defendant declined to treat the plaintiff's toenail fungus condition, despite a request to do so from the plaintiff. The Court found that there remained an issue of whether the defendant was deliberately indifferent to the plaintiff's medical needs. This finding was due in large part to the fact that the defendant's affidavit did not discuss or refute the plaintiff's allegation that the defendant's refusal to prescribe a course of treatment was based on his desire to save money at the expense of the plaintiff's health. The Court also noted that neither the Magistrate Judge nor the defendant had discussed whether the plaintiff's medical needs were "sufficiently serious" to implicate the Eighth Amendment. The Court sent the matter back to the Magistrate Judge for further proceedings.

Thereafter, the defendant filed an answer and affirmative defenses to the complaint. The Magistrate Judge then ordered the parties to file supplemental briefing on the issue of whether the plaintiff's medical needs were "sufficiently serious" to implicate the Eighth Amendment. The defendant filed a supplemental brief, and the plaintiff filed an answer to the brief, to which the defendant filed a reply. On November 7, 2002, the defendant filed a motion for summary judgment to which he attached as exhibits the plaintiff's prison medical records. The plaintiff filed an answer to this motion on December 3, 2002.

## II.

A motion for summary judgment under Federal Rule Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala,* 205 F.3d 937, 943 (6th Cir.2000). When the "record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons–Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir.2000). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir.1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the nonmoving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Napier v. Madison County, Ky.,* 238 F.3d 739, 741–42 (6th Cir.2001).

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir.1991).

■ The Supreme Court has held that the Eighth Amendment imposes upon prison officials the duty to "provide humane conditions of confinement," and that among the obligations attendant to the discharge of that duty is to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This obligation, however, is not unqualified. To the contrary, it is tightly circumscribed by rules requiring certain levels of proof when a prisoner argues that his conditions of confinement have crossed the boundary established by "contemporary standards of decency" incorporated into Eighth Amendment jurisprudence. *See Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ("[T]he Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion))). Thus, although under the Eighth Amendment, prisoners have a limited constitutional right to proper medical care, *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), that right is violated only when corrections officials are deliberately indifferent to the prisoner's serious medical needs. *Id.* at 104, 97 S.Ct. 285.

■ A claim that the Eighth Amendment has been violated by a prison official's deliberate indifference to a prisoner's adequate medical care has both an objective and a subjective component. To satisfy the objective component, the plaintiff must allege that the medical need asserted is "sufficiently serious." *Farmer,* 511 U.S.

at 834, 114 S.Ct. 1970. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

## A.

 Proof of the objective seriousness of a need for medical treatment is necessary, for it is only the deprivations that offend the social conscience, given the rigors and privations of a prison environment, that can implicate the Eighth Amendment. As the Supreme Court explained:

> The objective component of an Eighth Amendment claim is therefore contextual and responsive to "contemporary standards of decency." *Estelle, supra,* 429 U.S., at 103[, 97 S.Ct. 285]. For instance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes, supra,* 452 U.S., at 347[, 101 S.Ct. 2392], "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson [v. Seiter], supra,* 501 U.S. [294], at 298[, 111 S.Ct. 2321, 115 L.Ed.2d 271] [ (1991)] (quoting *Rhodes, supra,* 452 U.S., at 347[, 101 S.Ct. 2392]) (citation omitted). *A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."*

*See Estelle v. Gamble,* 429 U.S., at 103–104[, 97 S.Ct. 285].

*Hudson v. McMillian,* 503 U.S. 1, 8–9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (emphasis added).

Although he "harbor[ed] doubt" about the level of proof, the Magistrate Judge presumed from record that the "Plaintiff's medical need was a serious one within the meaning of the Fourth Amendment [sic]." R & R at 11–12. This was error. In commenting on the objective component of the claim, the Magistrate Judge observed that the Sixth Circuit has stated that "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of the suffering." *Westlake v. Lucas,* 537 F.2d 857, 859 (6th Cir.1976). R & R at 9. However, that case was decided before *Estelle* and *Farmer,* and was based on the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment; it never addressed the objective component of the Eighth Amendment cause of action. The Ninth Circuit has held, in a case cited by both parties, that "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992) (quoting *Estelle,* 429 U.S. at 104, 97 S.Ct. 285), *overruled on other grounds by WMX Technologies v. Miller,* 104 F.3d 1133 (9th Cir.1997). Another district court in this Circuit, after reviewing appellate decisions from other Circuits, held that a prisoner has "serious medical needs" if his needs have been diagnosed by a physician as mandating treatment, or are so obvious that even a lay person would easily recognize the necessity for a doctor's treatment, and those needs require immediate attention. *Smith v. Franklin County,* 227

F.Supp.2d 667, 677 n. 10 (E.D.Ky.2002) (citations omitted).

The medical records in this case, which are uncontradicted by the plaintiff, show that the plaintiff first complained about his foot occasionally burning and itching, with skin that cracked and bled, on November 24, 2000. He was treating the condition with an over-the-counter, topical ointment. The plaintiff first saw the defendant on December 7, 2000. The medical record for that visit documents several complaints, including a "toenail fungal infection," but no complaints of pain or itching. Dr. Al-Dabagh examined the plaintiff and confirmed the presence of "toenail changes" and a fungal infection, but he found no bleeding. The defendant's treatment plan called for laboratory tests, skin moisturizer, and a three-week follow-up. Dr. Al-Dabagh notes that he discussed the toenail infection with the plaintiff, "reassur[ed]" him, and found no indication for oral medications. Def.'s Ex. A.

Dr. Al-Dabagh next saw the plaintiff on December 26, 2000. There was no complaint concerning the toenail. The laboratory results had not been received. However, a note dated December 31, 2000 indicates that the lab results were positive for Hepatitis A, and that other lab values were elevated, which Dr. Al-Dabagh interpreted as abnormal liver function tests. Def.'s Ex. C, H. These results were discussed with the plaintiff at his next visit on January 2, 2001. Dr. Al-Dabagh examined the plaintiff and found a yellowing and abnormally thick toenail, but no acute findings or changes. He told the plaintiff that oral antifungal medication was contraindicated because of its effect on the plaintiff's liver, which showed signs of disease. Dr. Al Da-Baugh did not prescribe additional treatment for the toenail complaint, but did treat the plaintiff for another ailment. Def.'s Ex. B.

The plaintiff saw the defendant again on March 20, 2001 and made no complaint regarding his feet. He did, however, seek and receive treatment for a digestive problem. Def.'s Ex. D. He did visit the infirmary on April 6, 2001 and was found to have cracked skin between two toes on his right foot, and he was given an antibiotic ointment. Dr. Al-Dabagh also ordered the plaintiff started on oral antibiotics. Def.'s Ex. E.

The medical records indicate that while the plaintiff was under the care of the defendant, he was seen and treated for several ailments, including the complaints relating to his toenail. The records also show, as the plaintiff has alleged, that he did not receive the treatment he asked for, when he asked for it. However, there is no proof that the treatment the plaintiff requested was either necessary or appropriate, and it is undisputed that the defendant eventually did provide some treatment for the plaintiff's foot complaint. In all events, the most that can be proved from these undisputed facts is that the plaintiff's medical treatment was *delayed,* not that it was *denied.*

The Sixth Circuit has established a standard for proving that medical needs are sufficiently serious to satisfy the objective component of an Eighth Amendment claim in such circumstances. Following the Eleventh Circuit, the court stated that the district court must focus on the effect of the delay on the prisoner's health and the extent of his suffering, requiring that an "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier,* 238 F.3d at 742 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1188 (11th Cir.1994)); *see Smith,* 227 F.Supp.2d at 677.

Although a foot infection can lead to more dire consequences, including a systemic infection, amputation of a limb, or even death, the plaintiff has come forth with no evidence of any such consequences. There is no indication that the plaintiff suffered anything other than minor discomfort. The Court has little trouble concluding, therefore, that the delay in treating the plaintiff's toenail fungal infection did not amount to the deprivation of treatment for a "serious" medical condition, or that it offended "the evolving standards of decency that mark the progress of a maturing society" from which the Eighth Amendment draws its meaning. *See Trop,* 356 U.S. at 101, 78 S.Ct. 590. Because the plaintiff has not offered evidence to establish a material fact question on the objective component of his claim, it must fail as a matter of law.

### B.

As noted above, the plaintiff must also satisfy a subjective component of an Eighth Amendment claim by offering evidence that the defendant disregarded a known risk of further harm that might result from the deprivation of medical treatment. The Sixth Circuit in *Comstock* reiterated the Supreme Court's caution that "an official's failure to alleviate a significant risk that *he should have perceived but did not,* while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Comstock,* 273 F.3d at 703 (citing *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970). Nonetheless, a custodial official may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Farmer,* 511 U.S. at 843 n. 8, 114 S.Ct. 1970. Officials also may be shown to be deliberately indifferent to serious medical needs without evidence of conscious intent to inflict pain.

*Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988).

> However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

*Horn by Parks v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (internal citations omitted). Furthermore, although the Supreme Court has found that deliberate indifference to serious medical needs of prisoners does constitute an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment, the fact that a prisoner disagrees with a course of treatment that was prescribed, or even that the treatment he did receive was negligently administered, does not rise to a constitutional violation. *Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285.

In this case, the Magistrate Judge found that the medical care the plaintiff received from the defendant constituted at worst substandard medical care, not deliberate indifference to the plaintiff's serious medical needs. The Court agrees. The plaintiff's medical records demonstrate no subjective awareness on the defendant's part of any needs demanding immediate attention. There is no evidence suggesting that the defendant at any time deliberately ignored the plaintiff's medical needs with the intent to inflict pain or prolong any suffering. In fact, the records demonstrate that the defendant treated the plaintiff for several ailments between November 2000 and April 2001, after which the plaintiff was transferred to another prison.

The plaintiff objects to the recommendation and argues that he has shown that the defendant's desire to keep costs down

caused the defendant to show complete indifference to the plaintiff's medical needs. The plaintiff contends that he repeatedly asked the defendant about different methods of treatment for his toenail fungus condition and that the defendant told him that other forms of treatment are "too costly" and "not cost effective." Pl.'s Obj. at 2. The plaintiff also states that other doctors have told him that his liver condition is not so severe that he should not be put on the medication he requested from the defendant. *Id.* at 3. Therefore, the plaintiff argues, the defendant's refusal to treat his condition based on the costs of the treatment constituted deliberate indifference to his medical needs and a violation of his constitutional rights.

However, as the Magistrate Judge explained, the plaintiff's personal opinion that his care was substandard, or that he was not given the treatment he requested because of the costs associated with the treatment, raises claims of state-law medical malpractice, not constitutionally defective medical care indifferent to the plaintiff's serious medical needs. As with the objective component, there is no material fact question as to the subjective component of the plaintiff's Eighth Amendment claim, and the defendant is entitled to judgment as a matter of law.

### III.

The plaintiff has failed to show that the defendant's actions violated his constitutionally protected rights. Therefore, the Court finds that the defendant is entitled to summary judgment.

The Court also finds that the Magistrate Judge has reached the correct result with respect to his analysis of the subjective component of the plaintiff's claim. Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation [dkt # 48] is **ADOPTED IN PART.**

It is further **ORDERED** that the defendant's Motion for Summary Judgment [dkt # 39] is **GRANTED.**

It is further **ORDERED** that the plaintiff's Motion for Discovery [dkt # 35] is **DENIED** as moot.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE.**